United States District Court
Eastern District of Michigan
Northern Division

United States of America,

        Plaintiff,

                            Case No. **25-20634**ᐟ

v.

Michael Bacigalupo,

        Defendant.

_____/

# Plea Agreement

The United States of America and the defendant, Michael Bacigalupo, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1.  Counts of Conviction

Defendant will waive his right to an indictment and will plead guilty to Count 1 of the Information. Count 1 charges the defendant with conspiracy to commit wire fraud under 18 U.S.C. § 1343.

## 2.  Statutory Minimum and Maximum Penalties

The defendant understands that the counts to which he is pleading guilty carry the following minimum and maximum statutory penalties:

| Count 1 | Term of imprisonment: | Up to 20 years |
| --- | --- | --- |
| | Fine: | Up to $250,000, or twice the pecuniary gain |
| | Term of supervised release: | 5 years |

## 3. Agreement Not to Bring Additional Charges

If the Court accepts this agreement and imposes sentence

consistent with its terms, the United States Attorney's Office for the

Eastern District of Michigan will not bring additional charges against

the defendant for the conduct reflected in the factual basis.

## 4. Elements of Count of Conviction

The elements of Count 1 are:

1. Defendant devised a scheme to defraud or to obtain money or

   property by materially false or fraudulent pretenses,

   representations or promises;

2. Defendant acted with the intent to defraud; and

3. In advancing, furthering, or carrying out the scheme, Defendant

   transmitted any writing, signal, or sound by means of a wire

   communication in interstate commerce or caused the transmission

   of any writing, signal, or sound of some kind by means of a wire

communication in interstate commerce.

## 5. Factual Basis

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Beginning in at least in and around June 2020, and continuing through in and around November 2023, BACIGALUPO used his official positions with two non-profit entities in Bay City, Michigan, to fraudulently obtain and divert funds intended for use by the non-profit entities for their organizational requirements to instead pay for renovation to a public bandshell in Bay City. As a result of BACIGALUPO's fraud scheme, one of the non-profit entities was forced to declare bankruptcy and the other non-profit entity was unable to complete substantial renovations to its own building. As part of the scheme, BACIGALUPO also fraudulently secured a federal grant and sought distributions of the grant funds before his fraudulent conduct was uncovered and the requested funds disbursement was declined.

At all relevant times, BACIGALUPO served as the Director of the Bay City Downtown Development Authority (BCDDA), a non-profit

entity that undertook public improvements in Bay City to increase property tax valuation and promote economic growth. One such public improvement was the renovation of the Bay City Wenona Bandshell (the "Wenona Park Bandshell Project").

## Private Loan Fraud

At all relevant times, BACIGALUPO also served as the Chief Operation Officer for the Bay City State Theatre (BCST), a non-profit entity that sponsored performing arts and a film venue in the city. In approximately June 2020, BACIGALUPO contacted a non-profit corporation committed to economic development in the area (the "Private Lender"), seeking an $800,000 loan to assist in paying costs associated with the Wenona Park Bandshell Project. As collateral for the requested loan, BACIGALUPO identified the BCST theatre building.

Subsequently, BACIGALUPO falsely represented to the Private Lender that he had received BCST Board approval to obtain the loan, utilizing the theatre building as collateral. To substantiate his false representation, BACIGALUPO created and produced a fabricated version of BCST Board minutes to the Private Lender, falsely indicating

that BACIGALUPO had discussed with and received approval for the loan from the BCST Board.

Based on BACIGALUPO's fraudulent representations, the Private Lender provided a $800,000 loan to the BCST, secured by the BCST building. BACIGALUPO executed the loan agreement, ostensibly on behalf of BCST. Thereafter, the Private Lender provided several cashier's checks to BACIGALUPO, who deposited or caused to be deposited in BCST's bank account in July and August 2020, totaling $800,000. On BCST's behalf, BACIGALUPO made monthly loan repayments to the Private Lender totaling $277,000, before ceasing to make loan repayments altogether in September 2023, leaving an unpaid loan balance of at least $523,000. During that same time period, BACIGALUPO used the loan proceeds to fund aspects of the Wenona Park Bandshell Project without the knowledge or approval of the BCST Board. Due to BACIGALUPO's mismanagement and diversion of BCST's funds for non-BCST purposes, and BCST's inability to repay the Private Lender loan, BCST ultimately defaulted on the loan and declared bankruptcy.

Unauthorized Use of Bay County Historical Society Funds

At all relevant times, BACIGALUPO also served as the Executive
Director for the Bay City Historical Society (BCHS), a non-profit entity
dedicated to preserving the history of Bay County and developing
facilities and programs for the enhancement, enrichment, and
enjoyment of the Bay City community. As President, BACIGALUPO
was responsible for overseeing the remodeling of the BCHS museum.

During the BCHS remodeling project, from approximately
November 2020 through January 2022, BACIGALUPO used BCHS's
funds for non-BCHS purposes—that is, to fund aspects of the Wenona
Park Bandshell Project. This was done without the knowledge or
approval of the BCHS Board. In total, BACIGALUPO diverted
$231,541.17 of BCHS funds to the Wenona Park Bandshell Project.

To conceal his unauthorized use of BCHS funds, BACIGALUPO
made several misrepresentations to BCHS personnel and others. First,
BACIGALUPO made or caused to be made fraudulent entries in
BCHS's Quickbooks (the accounting software program used by BCHS
personnel to track business income and expenditures). The fraudulent
entries, totaling $231,541.17 in disbursements, falsely indicated that
BCHS funds were paid to the general contractor ("Contractor 1") for the

BCHS remodeling project. In fact, those funds were paid to Contractor 1 for work associated with the Wenona Park Bandshell Project.

Second, BACIGALUPO created or caused to be created fraudulent invoices from Contractor 1 and a second contractor ("Contractor 2") to substantiate the disbursement of BCHS funds. For example, in September 2020, BACIGALUPO created or caused to be created a fraudulent invoice from Contractor 2 in the amount of $50,000 that purported to concern costs of electrical and lighting work by Contractor 2 on the BCHS remodeling project. In fact, Contractor 2 had not performed the work, generated the invoice, or received any payment for such work. BACIGALUPO ultimately deposited or caused to be deposited the $50,000 payment from BCHS into a bank account that he controlled and then used the funds to pay for work associated with the Wenona Park Bandshell Project.

## Federal Grant Fraud

In the summer of 2022, BACIGALUPO assisted the City of Bay City in applying for a $900,000 federal grant through the Michigan Economic Development Corporation ("MEDC") for the Wenona Park Bandshell Project. That fall, MEDC informed Bay City that it did not

receive the federal grant. Under false pretenses, however, in May 2023, BACIGALUPO continued to pursue the federal grant funds to cover outstanding expenses associated with the Wenona Park Bandshell Project. In doing so, BACIGALUPO informed an MEDC representative that BACIGALUPO—not Bay City representatives—was the applicant for the grant and that the funds were intended for the BCST.

In June 2023, MEDC approved BACIGALUPO's grant application (purportedly for the benefit of the BCST). And, in September 2023, BACIGALUPO requested an initial $450,000 disbursement of the approved grant funds from MEDC. When an MEDC employee sought documentation to substantiate BACIGALUPO's claim that non-grant and matching funds had already been expended on the project, BACIGALUPO caused another person to generate a fraudulent invoice that BACIGALUPO then submitted to MEDC. BACIGALUPO also emailed the MEDC representative a screenshot of a fabricated QuickBooks entry purportedly showing that Contractor 2 had deposited a $945,930.00 check from BCST. Upon review, the MEDC employee determined that the documentation BACIGALUPO was insufficient and declined to disburse the requested grant funds, absent further proof of

eligibility. When BACIGALUPO did not provide the required
documentation, MEDC did not disburse the grant funds.

## 6. Advice of Rights

The defendant has read the Information, has discussed the
charges and possible defenses with his attorney, and understands the
crime charged. The defendant understands that, by pleading guilty, he
is waiving many important rights, including the following:

A. The right to plead not guilty and to persist in that plea;

B. The right to a speedy and public trial by jury;

C. The right to be represented by counsel—and, if necessary,
have the court appoint counsel—at trial;

D. The right to be presumed innocent and to require the
government to prove the defendant guilty beyond a reasonable
doubt at trial;

E. The right to confront and cross-examine adverse witnesses
at trial;

F. The right to testify or not to testify at trial, whichever the
defendant chooses;

G.      If the defendant chooses not to testify at trial, the right to
have the jury informed that it may not treat that choice as
evidence of guilt;

H.      The right to present evidence or not to present evidence at
trial, whichever the defendant chooses; and

I.      The right to compel the attendance of witnesses at trial.

## 7.      Collateral Consequences of Conviction

The defendant understands that his conviction here may carry
additional consequences under federal or state law. The defendant
understands that, if he is not a United States citizen, his conviction
here may require him to be removed from the United States, denied
citizenship, and denied admission to the United States in the future.
The defendant further understands that the additional consequences of
his conviction here may include, but are not limited to, adverse effects
on the defendant's immigration status, naturalized citizenship, right to
vote, right to carry a firearm, right to serve on a jury, and ability to hold
certain licenses or to be employed in certain fields. The defendant
understands that no one, including the defendant's attorney or the
Court, can predict to a certainty what the additional consequences of

the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his conviction.

## 8. Defendant's Guideline Range

### A. Court's Determination

The Court will determine the defendant's guideline range at sentencing.

### B. Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way;

denying his guilt on the offense to which he is pleading guilty;

committing additional crimes after pleading guilty; or otherwise

demonstrating a lack of acceptance of responsibility as defined in USSG

§ 3E1.1—the government will be released from its obligations under

this paragraph, will be free to argue that the defendant not receive *any*

reduction for acceptance of responsibility under USSG § 3E1.1, and will

be free to argue that the defendant receive an enhancement for

obstruction of justice under USSG § 3C1.1.

## C.    Other Guideline Recommendations

The parties have no joint recommendations as to the defendant's

guideline calculation.

## D.    Factual Stipulations for Sentencing Purposes

The parties have no additional factual agreements for sentencing

purposes.

## E.    Parties' Obligations

Both the defendant and the government agree not to take any

position or make any statement that is inconsistent with any of the

guideline recommendations or factual stipulations in paragraphs 8.B,

8.C, or 8.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

## F.     Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 9.     Imposition of Sentence

### A.     Court's Obligation

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

### B.     Imprisonment

#### 1.     Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment not exceed the midpoint of the defendant's guideline range as determined by the Court.

## 2. No Right to Withdraw

The government's recommendation in paragraph 9.B.1 is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If, however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

## C. Supervised Release

### 1. Recommendation

The parties have no agreement as to supervised release.

## 2. No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

## D. Fines

The parties have no agreement as to a fine.

## E. Restitution

The Court must order restitution to every identifiable victim of the defendant's offense. The Court will determine at sentencing who the victims are and the amounts of restitution they are owed.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant

agrees that the schedule of payments is a schedule of the minimum

payment due, and that the payment schedule does not prohibit or limit

the methods by which the United States may immediately enforce the

judgment in full.

The defendant agrees to make a full presentence disclosure of his

financial status to the United States Attorney's Office by completing a

Financial Disclosure Form and the accompanying releases for the

purpose of determining his ability to pay restitution. The defendant

agrees to complete and return the Financial Disclosure Form within

three weeks of receiving it from government counsel. The defendant

agrees to participate in a presentencing debtor's examination if

requested to do so by government counsel.

## F. Forfeiture

As part of this agreement, defendant agrees to forfeit any and all

property, real or personal, which constitutes or is derived, directly or

indirectly, from proceeds traceable to his participation in the described

scheme under 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C.

§ 2461(c). Specifically, defendant agrees to the entry of a forfeiture

money judgment against him, in favor of the United States, in the amount of $754,541.17 (the "Money Judgment").

Following entry of this Rule 11 Agreement, defendant agrees to the Court's prompt entry of one or more orders of forfeiture and agrees to sign a Stipulated Preliminary Order of Forfeiture for the Money Judgment. Defendant agrees that the forfeiture order shall be final and effective as to his interests at entry.

Defendant acknowledges that he spent and dissipated the criminal proceeds that he obtained in connection with the described scheme, making these funds unavailable for forfeiture. For this reason, defendant agrees that the Money Judgment may be satisfied, to whatever extent possible, from any other property he owns or which is under his dominion and control. Defendant explicitly agrees to the forfeiture of any and all assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant agrees to cooperate with the United States in connection with its efforts to identify, locate, seize, and forfeit property

in accordance with this agreement. Defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, any property that is forfeitable to the United States and will execute any legal documents that may be required to transfer title to the United States. Defendant will take whatever steps are necessary to ensure that his assets are not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture.

Defendant knowingly, voluntarily, and intelligently waives all constitutional and statutory challenges, in any form, to any forfeiture carried out in accordance with this plea agreement, on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Excessive Fines Clause of the Eighth Amendment. Defendant acknowledges that he understands that forfeiture is part of the sentence that may be imposed on him in this case and waives his right to challenge any failure by the court to advise him of this, under Rule 11(b)(1)(J), or otherwise, at the time his guilty plea is accepted. Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the

charging instrument, pronouncement of forfeiture at sentencing, and incorporation of forfeiture in the judgment and waives any right he may have to request a jury determine forfeiture under Rule 32.2(b)(5).

## G. Special Assessment

The defendant understands that he will be required to pay a special assessment of $100 due immediately upon sentencing.

## 10. Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. The defendant also waives any right he may have to appeal his sentence on any grounds, unless his sentence of imprisonment exceeds the top of the guidelines as determined by the Court.

## 11. Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any

other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 12. Remedies for Withdrawal, Breach, Rejection, or Vacatur

If the defendant is allowed to withdraw his guilty plea or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included offense, the government may also reinstate any charges or file any additional charges against the defendant for the greater offense, and the defendant waives his double-jeopardy rights with respect to the greater offense. If the government reinstates any charges or files any

additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 13. Use of Withdrawn Guilty Plea

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

## 14. Parties to Plea Agreement

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## 15. Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the

guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

## 16. Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in

the United States Attorney's Office by 5:00 P.M. on August 25, 2025.

The government may withdraw from this agreement at any time before

the defendant pleads guilty.

Jerome F. Gorgon Jr.
United States Attorney

John K. Neal

John K. Neal
Chief, Anti-Corruption Unit

T. Patrick Martin
Assistant U.S. Attorney

William Orr
Assistant U.S. Attorney

Dated: August 22, 2025

Page **23** of **24**

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

Jeffrey S. Rupp
Attorney for Defendant

Michael Bacigalupo
Defendant

Dated:   8.25.25