United States District Court
Eastern District of Michigan
Northern Division

United States of America,

        Plaintiff,

                              Crim. Case No. 25-20634

v.                        Hon. David M. Lawson

Michael Bacigalupo,

        Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Michael Bacigalupo orchestrated a multi-year fraud scheme that devastated two Bay City non-profit organizations, drove one of them into bankruptcy, and deprived the broader Bay City community of the cultural and historical resources those organizations existed to serve. Between June 2020 and November 2023, Bacigalupo exploited positions of profound institutional trust—simultaneously serving as Director of the Bay City Downtown Development Authority (BCDDA), Chief Operating Officer of the Bay City State Theatre (BCST), and Executive Director of the Bay City Historical Society (BCHS)—to fraudulently obtain three-quarters of a million dollars and redirect those funds to what was, in essence, a personal vanity project: the renovation of the Wenona Park

Bandshell. Bacigalupo seemingly came to believe that what *he* thought was good for Bay City was the overarching goal, with no regard for what it took to realize those desires (nor for the ultimate financial consequences of his actions).

While Bacigalupo may argue that this was simply poor judgment that snowballed out of control, it's important to recall what he actually did: throughout the scheme Bacigalupo fabricated board minutes, forged contractor invoices, altered accounting records, *and* fraudulently obtained a federal grant—compounding each deception with another and repeatedly trying to conceal his actions. All told, he sought control over nearly $2,000,000, spent a full $754,541.17, and left actual havoc in his wake.

This case calls for a meaningful sentence of imprisonment. The nature of the offense is serious: Bacigalupo was not a rogue employee acting opportunistically on a single occasion; he was the senior leader of multiple non-profits simultaneously, allowing him to engage in a staggering level of self-dealing over multiple years. The harm to the community is concrete: the Bay City State Theatre (BCST) declared bankruptcy, and the Bay County Historical Society, (BCHS) was left

unable to complete much-needed renovations to its own museum. And deterrence is critical here: Non-profit organizations, community development authorities, and similar civic entities routinely vest significant financial authority in small numbers of senior staff with limited oversight—precisely the conditions that made Bacigalupo's scheme possible, and precisely the conditions that make a strong deterrent signal necessary.

As discussed further below, the government respectfully requests the Court impose a sentence of 54 months in prison.

## I.     FACTUAL BACKGROUND

### A.  Bacigalupo's Positions of Trust

At all relevant times, Bacigalupo held three senior, civic leadership positions simultaneously: First, as Director of the Bay City Downtown Development Authority (BCDDA), he oversaw public improvements in Bay City aimed at increasing property tax valuations and stimulating economic growth. One such project was the renovation of the Wenona Park Bandshell (which became the object of his fraudulent conduct). Second, as Chief Operating Officer of the BCST, he administered a non-profit performing arts and film venue (which his actions ultimately drove

in to bankruptcy).  And finally, as Executive Director of the BCHS, he oversaw a non-profit dedicated to preserving Bay County's history and serving the broader community (which he left financially impaired and unable to complete its own improvement project).

Each of these roles placed Bacigalupo in a position of fiduciary responsibility to the organizations he led and to the communities they served. Each organization trusted him to handle their finances honestly and for organizational purposes. He betrayed that trust in each instance.

### B.  The Private Loan Fraud (BCST / $800,000)

In approximately June 2020, Bacigalupo approached the Bay County Growth Alliance (BCGA), a local non-profit economic development lender, and sought an $800,000 loan, identifying the BCST theater building as collateral. He falsely represented to BCGA that the BCST Board had approved the transaction. To substantiate this lie, he fabricated BCST Board minutes purporting to show approval that was never sought and was never given.

Based on these misrepresentations, BCGA extended the loan. Bacigalupo received $800,000 in cashier's checks, deposited them into BCST's bank accounts in July and August 2020, and then used the

proceeds to fund the Wenona Park Bandshell Project—without the knowledge or approval of the BCST Board. After making partial repayments totaling $277,000, Bacigalupo ceased payments altogether in September 2023, leaving an unpaid balance of at least $523,000. Thereafter, unable to service a debt it never authorized and whose proceeds had been diverted away from its own purposes, BCST defaulted on the loan and declared bankruptcy.

### C. The Unauthorized Diversion of BCHS Funds ($231,541.17)

From approximately November 2020 through January 2022, Bacigalupo diverted $231,541.17 from BCHS to the Wenona Park Bandshell Project. He accomplished this in two principal ways. First, he made or caused to be made fraudulent entries in BCHS's QuickBooks accounting system, falsely recording that funds had been disbursed to BCHS's general contractor (Contractor 1) for the BCHS museum remodeling project, when in fact those funds were paid to Contractor 1 for work *on the Bandshell Project*. Second, he fabricated invoices from Contractor 1 and a second contractor (Contractor 2) to create a paper trail for the false disbursements. In one documented example, he generated or caused to be generated a fake $50,000 invoice from Contractor 2 for

electrical and lighting work on the BCHS remodeling project. This was work Contractor 2 never performed, for which it generated no invoice, and for which it received no payment. Bacigalupo instead deposited that $50,000 into an account he controlled and used it for the Bandshell Project. Left without the funds Bacigalupo had misappropriated, BCHS was unable to complete the substantial renovations to its own museum.

### D. The Federal Grant Fraud (MEDC / $900,000 Grant)

In the summer of 2022, Bacigalupo assisted the City of Bay City in applying for a $900,000 federal grant through the Michigan Economic Development Corporation (MEDC) for the Wenona Park Bandshell Project. MEDC initially declined. Undeterred, Bacigalupo revived the application in May 2023—this time falsely representing to MEDC that he, not the City, was the applicant, and that the grant was for the benefit of BCST. MEDC approved the application in June 2023.

In September 2023, Bacigalupo submitted a request for an initial $450,000 disbursement. When an MEDC employee sought documentation to confirm that non-grant matching funds had already been expended, Bacigalupo caused another individual to generate a fraudulent invoice for submission to MEDC, and separately emailed

MEDC a screenshot of a fabricated QuickBooks entry purporting to show a $945,930.00 check deposit from Contractor 2. MEDC's reviewers determined the documentation was insufficient, declined to disburse the funds, and ultimately—once Bacigalupo failed to provide adequate substantiation—withheld the grant entirely.

## II. GUIDELINES RANGE

The PSR calculates Bacigalupo's sentencing guidelines range as 51-63 months using an offense level of 24 and a criminal history category of I. The government accepts this range as accurate and would urge the Court to adopt it for purposes of sentencing.

## III. SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), sets forth a number of factors that the Court shall consider in sentencing the defendant. These most relevant factors are discussed below:

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant;**

The nature and circumstances of this offense are serious, and they warrant the Court's close attention for reasons beyond the amount of loss.

First, this was a sustained, deliberate, and multi-layered scheme. Bacigalupo did not commit just a single act of fraud. Over a period of

approximately three and a half years—from June 2020 through November 2023—he systematically diverted funds from two separate non-profit organizations through multiple distinct methods: fabricated board minutes, forged contractor invoices, manipulated accounting records, and a fraudulent federal grant application. Each successive fraud was designed to conceal or fund the ones before it. This is not a case of a momentary lapse or situational opportunism. It reflects a sustained course of deliberately deceptive conduct.  What might colloquially be called 'robbing Peter to pay Paul' was really robbing BCST and BCHS to pay for the Wenona Park Bandshell.

Second, Bacigalupo's use of fiduciary positions to commit his crimes is a significant aggravating circumstance. The BCST Board and BCHS Board each explicitly trusted Bacigalupo to manage their organizations' finances honestly. They relied on him as their senior executive. He exploited that reliance directly: he fabricated the very board approval documents that the board members themselves would have been responsible for generating, and he manipulated the accounting systems those boards used to monitor organizational finances. Betrayal of institutional trust of this character is particularly corrosive because it is

8

so difficult to detect and because the victim boards, typically comprised of volunteers like the BCST and BCHS, often lack the oversight infrastructure to readily detect intentional self-dealing.

Third, while Bacigalupo did not personally enrich himself in the conventional sense—i.e., the diverted funds went to a public construction project rather than into his personal bank account—this does not meaningfully negate the seriousness of the offense. That is because Bacigalupo's actions caused significant harm, wholly independent of whether those actions redounded to his own financial benefit. The BCST lost a historic building that Bacigalupo used as collateral for a loan he was never authorized to take out and that he ultimately left unpaid, to the tune of $523,000. As a direct result, BCST was forced into bankruptcy. The BCHS lost $231,541.17 (with $196,641.17 remaining uncompensated) and was left unable to complete the museum renovations it was undertaking for the benefit of the Bay City community. He caused concrete, serious, institutional harm that cannot meaningfully be unwound.

Fourth, the scheme involved a federal dimension. He fraudulently obtained approval of a $900,000 federal grant and submitted fabricated

9

documentation to a federal grantmaking body in an attempt to extract $450,000 in grant funds. This requested disbursement—complete with fabricated invoices and falsified QuickBooks records—is a separate assault on the integrity of federal funding programs that exist to serve legitimate public purposes.

As to Bacigalupo's own history and characteristics, what is telling is that he has lived an otherwise law-abiding life; he has had no issue maintaining gainful employment; he has no mental health or addiction issues; and his childhood was largely unremarkable. In other words, there is nothing in his background that might explain the turn toward criminality aside from the defendant's own ego: he was a major player in the Bay City civic arena, that was a key piece of his personal and professional identity, and he was apparently willing to do whatever it took to maintain his reputation in that regard—consequences notwithstanding.

**(2) The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide defendant with appropriate education or vocational training.**

### (A) The Seriousness of the Offense

A meaningful sentence of imprisonment is necessary to reflect the seriousness of what Bacigalupo did. He took it upon himself to decide what was important for Bay City and when funding for his pet project provided difficult to obtain, he decided to stay the course by fabricating board minutes, falsifying accounting records, and faking invoices. While he may not have intended for any one organization to bear the brunt of his decisions, that harm occurred, nonetheless. The Bay City State Theatre had no say over whether an $800,000 loan to fund the renovation of the Wenona Park bandshell was in its best interest; clearly, it was not.

The former BCST chair of the board stated in his victim impact statement "the State Theatre's mission depended on credibility. Mr. Bacigalupo's fraud converted that credibility into a weapon against the very institution and community it was meant to benefit." This sentiment underlies the crumbling of a local institution, causing its building to be sold in the context of BCST's bankruptcy proceedings. The BCHS also

provided a statement detailing the immeasurable impact of Bacigalupo's actions: "Several full-time employees were laid off due to the sudden and severe loss of funds."  "The remaining staff were reduced to a skeletal crew with their hours cut to the bare minimum necessary to keep the museum open to the public."  At one point, the BCHS considered closing the museum and had to cancel several programs "vital to community engagement and education."  A sentence that does not include a meaningful term of imprisonment would fail to account for the full consequences of Bacigalupo's conduct, which extends far beyond just the financial impact on these institutions.

### (B) Adequate Deterrence

Deterrence is particularly critical in this type of case, and the Court should give it substantial weight. Cases involving fraud by senior non-profit executives present a structural problem that makes deterrence especially important: the very features of these roles that enable fraud also make it difficult to detect. Non-profit organizations, municipal development authorities, community historical societies, and similar civic entities frequently vest significant financial authority in a small number of senior executives, often with limited board oversight, limited

internal audit capacity, and extensive reliance on executive self-reporting. This is by design and reflects the practical realities of mission-driven organizations operating with lean administrative structures. But such circumstances create environments where a dishonest executive—particularly one who holds positions with multiple organizations simultaneously, as Bacigalupo did—can operate with impunity for extended periods of time.

Bacigalupo's scheme illustrates this precisely. He exploited the gap between the trust that each board placed in him and the limited capacity of each board to independently verify his representations. He manipulated the QuickBooks systems that boards used to monitor finances. He generated fake board minutes to defeat any question about whether proper approvals had been obtained. He fabricated contractor invoices to defeat any audit of disbursements. The scheme lasted more than three years before it unraveled and not because the fraud was particularly sophisticated, but because the oversight structures were not positioned to catch it in real time.

This structural reality has a direct implication for deterrence. Potential future wrongdoers in analogous positions of trust will not be

deterred by the prospect of detection alone because the odds of detection, in environments with limited oversight, may not be high enough to function as an effective deterrent on their own. What deters individuals in high-trust, low-oversight roles is the certainty that the consequences will be severe. A sentence that minimizes or avoids imprisonment in a case like this sends exactly the wrong message to the population of individuals whose conduct this Court is best positioned to influence. General deterrence in cases of this type is not speculative. A sentence that reflects the full gravity of the offense tells those individuals that exploitation of institutional trust will be treated seriously by the courts. Anything less risks encouraging the next Bacigalupo.

### (3) The kinds of sentences available

The maximum penalty for Count 1, which charges Wire Fraud, in violation of 18 U.S.C. § 1343, is 20 years imprisonment followed by up to three years of supervised release, and/or a fine not to exceed $250,000.

The defendant's offense is a Class C felony, and calculation of the sentencing guidelines places him in Zone D of the sentencing table. Under the applicable guideline provision, the "minimum term" of the

14

defendant's advisory guideline range for Count One (here, 51 months), "shall be satisfied by a sentence of imprisonment." U.S.S.G. § 5C1.1(f).

As stated previously, the government believes that a 54-month custodial sentence (near the low-end of the guideline range), followed by three years of supervised release, is "sufficient, but not greater than necessary," when considering the purposes of 18 U.S.C. § 3553(a).

**(4) The need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct**

Defendant Bacigalupo is the only defendant charged in this case. However, the JSIN information referenced in the PSR at ¶ 83 may be valuable for the Court as it seeks to avoid unwarranted disparities nationwide. Specifically, the government would note that 98% of similarly situated defendants received a custodial sentence, with the average length of imprisonment being 41 months.

**(5) The need to provide restitution**

Restitution is mandatory in this case, as dictated by the Mandatory Victims Restitution Act codified at 18 U.S.C. § 3663A. The government would ask the Court to order restitution to the following victims in the following amounts:

15

Bay City Historical Society: ......................................... $196,641.17

Bay City State Theatre (Bankruptcy Estate): .............$251,000.00[1]

## (6) Forfeiture

As part of his Rule 11 Plea Agreement, the defendant agreed to the entry of a forfeiture money judgment against him. The Court previously entered a preliminary order of forfeiture (ECF No. 26) which included a money judgment in the amount of $754,541.17. The government would ask that the preliminary order be made final and incorporated into the judgment. Because forfeiture is itself a penalty of defendant's offense, it should not be offset by any amount recovered by the victims. *See United States v. Peters*, 732 F.3d 93, 102 (2d Cir. 2013) (defendant who fraudulently obtained a loan must forfeit the gross amount paid by the bank, without any offset for the amount the bank may have recovered).

---

[1] The government reached this amount by taking the total unpaid balance of the loan of $523,000 and subtracting the amount of $272,000, which the bankruptcy estate recovered from Mr. Bacigalupo ($72,000) and two board members ($200,000 jointly and severally) as part of the Chapter 7 bankruptcy. (*See* Bankruptcy Case 24-20261-dob ECF No. 150). The proceeds from the sale of the theatre in the Chapter 7 bankruptcy were used to pay off the balance of the Bay County Growth Alliance Loan; however, since the bankruptcy estate had to pay $523,000 to pay off the loan, restitution is still appropriate for the amount of the loan balance less the amount recovered as part of the settlement.

## RECOMMENDATION

For all of the reasons stated above, the government recommends that Defendant Michael Bacigalupo be sentenced to 54 months imprisonment, followed by a three-year term of supervised release.  The government also asks that Bacigalupo to be ordered to pay restitution in the amount of $447,641.17 and forfeiture in the amount of $754,541.17.

Respectfully submitted,

Jerome F. Gorgon, Jr.
United States Attorney


*s/ William Thomas Orr*
William Thomas Orr
Assistant U.S. Attorney
william.orr@usdoj.gov,

*s/ Ryan A. Particka*
Ryan A. Particka
Assistant U.S. Attorney
ryan.particka@usdoj.gov

Date: April 10, 2026

17

## Certificate of Service

I certify that on April 10, 2026, I caused this Sentencing Memorandum to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing counsel of record:

> Jeffrey J. Rupp
> 1107 Gratiot Avenue
> Saginaw, MI 48602
> jrupp@brisbois-attys.com

A copy of this memorandum was also provided to U.S. Probation Officer Anthony Pilara, via email.

> *s/Ryan A. Particka*
> Assistant U.S. Attorney

18